1. Petitioner applied and successfully sat for the

---

**In re James Ivan WATTS, Applicant.**

**No. 86–1527.**

District of Columbia Court of Appeals.

Submitted Feb. 1, 1989.
Decided April 27, 1989.

---

Merrill G. Hansen, Salt Lake City, Utah, for petitioner.

Lloyd N. Moore, Jr., Washington, D.C., for respondent.

Before ROGERS, Chief Judge, MACK, Associate Judge, and KERN, Senior Judge.

PER CURIAM:

Petitioner, James Ivan Watts, seeks admission to the Bar of the District of Columbia.[1] After a formal hearing the Committee on Admissions concluded that he had failed to establish his present moral character and fitness to practice law pursuant to

February 1984 bar examination.

D.C.App.R. 46(d) & (e), and accordingly declined to certify his admission to the Bar. We remand the case to the Committee.

I

In *In re Manville*, 538 A.2d 1128 (D.C. 1988) (*Manville II*), the court, sitting en banc, adopted the standards by which the Committee on Admissions and this court shall determine whether an applicant for admission to the District of Columbia Bar has demonstrated current moral fitness to practice law notwithstanding a prior felony conviction.

Fundamental to the court's approach in *Manville II* was its rejection of "a *per se* rule of exclusion of previously convicted felons, opting instead for case-by-case determinations of whether the applicant, as of the time of the application, has the good moral character necessary for admission to the bar." *Id.* at 1132. The court set forth a nonexhaustive list of eleven factors to consider in evaluating the candidate's moral fitness, *id.* at 1133 & n. 4, and stated that the Committee on Admissions must conduct an independent investigation unless it is satisfied that, based on "the na-

ture of the crime and the other surrounding circumstances, together with the other information concerning the applicant that comes to the Committee's attention, ... an investigation would turn up no substantial adverse information." *Id.* at 1133.[2]

In the instant case, the Committee stated in its report to the court that the offenses of which petitioner was convicted were serious because they involved a betrayal of trust of those who had put petitioner in positions of authority and that it had no assurance that similar offenses would not occur in the future.[3] However, the Committee did not conduct an independent investigation of the petition to reach an informed decision regarding his current moral fitness nor did the Committee Report evince thorough examination of all the relevant factors established in *Manville II* which support petitioner's application.[4]

Although the petitioner had submitted several affidavits in support of his claim of present moral fitness, the Committee stated in its report that it was uncertain of the weight that it should give to the affidavits, noting that some of the affidavits were several years old. Committee Report at 8

---

2. *Manville II* involved three applicants, each of whom had been convicted of a felony more than a decade prior to our decision. Pursuant to an earlier remand, *In re Manville*, 494 A.2d 1289 (D.C.1985) (*Manville I*), the Committee had conducted an independent investigation of Manville but not in regard to the other two applicants. The court stated that it would have been preferable for the Committee to have made independent investigations in their cases also, and observed that the Committee's failure to do so had created a risk of further delay in the consideration of their applications. 538 A.2d at 1133. Nonetheless, the court was satisfied that in view of Strauss' and Brook's ex parte representations, the court could accept the Committee's certification of their applications to the Bar without remanding their cases for independent investigations. *Id.*

3. Petitioner disclosed in his application for bar admission that he had been convicted of two felony offenses which he had committed within two weeks of each other while he was attending law school. In November 1979, while examining an unmounted diamond in a jewelry store, he substituted an artificial stone for the real one. The store clerk, with whom petitioner had previously conducted business, had left petitioner alone with the diamond. Petitioner was convicted by a jury of theft, a second degree felony,

and sentenced to an indeterminate term of not less than one, nor more than fifteen, years and fined $1,500. A stay was granted and petitioner was placed on probation with minimal jail time imposed. His conviction was affirmed on appeal.

At the time of his arrest, petitioner was Executive Director of the Redevelopment Agency of Murray City, Utah. A city audit revealed that petitioner had diverted three thousand dollars from the agency to his personal account. Petitioner pled guilty to theft, a third degree felony, and was sentenced to zero to five years. A stay was granted and he was placed on probation for one year, ordered to pay a fine, and to make restitution.

4. Although *Manville II* had not been decided at the time the Committee filed its report, *Manville I* was available to the Committee more than a year before the Committee reached its recommendation. *Manville I* established the relevant factors to consider in evaluating the moral fitness of a bar applicant who has been convicted of a crime, *id.* at 1296–97, and provided that as part of the Committee's evaluation it "should invariably" conduct "an independent investigation." *Id.* at 1294 & n. 7.

& n. 2. Several of the affidavits were written by prominent members of petitioner's community who were thoroughly familiar with the circumstances of his case, including a city commissioner for whom petitioner worked, petitioner's probation officer, and a psychologist with whom petitioner had consulted. Accordingly, the Committee's treatment of the affidavits was too summary in nature.[5] We are uncertain whether the Committee thought that the affiants might be of a different view than at the time they swore to petitioner's present good character and moral fitness. Nor are we clear whether the Committee thought there was information which might reflect adversely on petitioner's present moral character and fitness. Since the main concern of the Committee was a lack of assurance that petitioner would not in the future commit another serious crime involving the betrayal of those who trust him, the affidavits were of critical importance.

The Committee's failure to order an independent investigation, in the absence of reliance on the affidavits, is likewise of some concern since the record amply illustrates many favorable *Manville II* factors with respect to petitioner's rehabilitation which the Committee Report does not thoroughly pursue. Petitioner's counsel, a long-time friend and business associate of petitioner, advised the Committee regarding the nature of petitioner's reputation in the community and his demonstrated ability to handle stressful situations.

Petitioner also advised the Committee that he had learned from his experiences, and he assured the Committee that he could now handle stressful situations with maturity and would not again engage in the type of conduct that had resulted in his convictions. Our reading of his testimony indicates that he was forthcoming with the Committee and ready to provide any information that the Committee determined it required.

Petitioner has been working successfully in positions of responsibility for nine years. Since 1980 he has been employed by the Utah Rural Redevelopment Agency and has administered funds in excess of $3.4 million. He has handled his considerable responsibilities without further difficulty, and his agency has been the subject of various internal and external audits during this period. He has done so notwithstanding various personal problems that he has had to confront.

Furthermore, the Salt Lake County Attorney's office initiated proceedings, pursuant to its discretion under Utah law, to expunge both of petitioner's convictions. In May 1985, the Utah Supreme Court ordered both of the convictions expunged after finding that petitioner was rehabilitated and the expungements would not be against the public interest. The State of Utah also has admitted petitioner to its Bar where he has practiced for two years without incident. He has been active in his community, working with the bar, representing indigents, serving on the Board of Directors of the Children's Center, and undertaking other volunteer activities.

Nevertheless, the Committee declined to recommend to this court that petitioner should be admitted to practice in the District of Columbia. While the factors set forth in *Manville II* are not intended to be exhaustive, it is notable that of eleven considerations, the Committee reached a negative conclusion about petitioner on only three, at most, and as to those factors, an independent investigation would have aided the Committee in assessing the weight that should be accorded to the affidavits.

Accordingly, the case is remanded to the Committee to conduct an independent investigation of, and to make further findings as to, petitioner's current moral fitness to practice law in the District of Columbia.

*Remanded.*

---

5. The affidavits are not a part of the record before this court.